UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X
KLEBER MANUEL SEAZ, SIXTO DIAZ
TACURI, and CARLOS DIAZ TACURI,

                     Plaintiff,

        -against-

EXCELLENT BUS SERVICE INC. and
ISAAC LEIB WERTZBERGER,

                    Defendants.
----------------------------------------------------------X

**MEMORANDUM
AND ORDER**
21-CV-6967 (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      Plaintiffs Kleber Manuel Seaz, Sixto Diaz Tacuri, and Carlos Diaz Tacuri initiated

this action in state court on December 3, 2021, against Defendants Excellent Bus Service

Inc. and Isaac Leib Wertzberger, alleging personal injury claims related to a motor

vehicle accident. (*See* Compl., ECF No. 1-1, ¶¶ 13–50.) Defendants removed the case to

federal court on December 17, 2021, filed their amended answer on April 15, 2022, and

now seek leave to amend again in order to add an affirmative defense and a

counterclaim alleging fraud. (*See* Not. of Removal, ECF No. 1; Am. Answer, ECF No. 14;

Second Mot. to Amend Answer ("Second Mot. to Amend"), ECF No. 40; Second

Proposed Am. Answer with Counterclaims ("Second Proposed Am. Answer"), ECF No.

44.) For the reasons set forth below, the Court denies Defendants' motion to amend.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

     As noted above, Plaintiffs first filed this lawsuit on December 3, 2021, alleging

that a motor vehicle accident caused them serious personal injuries. (*See* Compl., ECF

No. 1-1, ¶¶ 13–50.) Defendants then removed and filed their answer. (*See* Not. of

Removal, ECF No. 1; Answer, ECF No. 3.) One of Defendants' original affirmative

defenses alleged that Plaintiffs "did not sustain basic economic loss or 'serious injury'" under New York law. (Answer, ECF No. 3, ¶ 11.) In their initial answer, Defendants raised no counterclaims, and their affirmative defenses included no explicit allegations of fraud. (*See generally* Answer, ECF No. 3.)

At the initial conference held on February 10, 2022, the Court set a discovery schedule. (Feb. 10, 2022 ECF Min. Entry & Order.) The order entered after the initial conference states in part: "The deadline to join new parties or amend the pleadings is 6/16/2022." (*Id.* (emphasis omitted).) The Court also set a deadline for the completion of discovery, which the Court subsequently extended several times at the request of the parties. (*Id.*; June 16, 2022 ECF Min. Entry & Order; Sept. 29, 2022 ECF Min. Entry & Order; Nov. 10, 2022 ECF Min. Entry & Order (granting Defendant's request to extend fact discovery deadline on consent).)[1] After the sixth extension request, the Court warned that, "**[g]iven the age of this case and the parties' numerous previous requests for an extension, the Court will not look favorably upon further requests for extensions absent extraordinary and unforeseen circumstances.**" (Jan. 2, 2024 ECF Order (emphasis in original).) Nevertheless, Defendants filed a seventh extension request on March 5, 2024. (*See* Mot. for Extension of Time, ECF No. 26.) The Court granted the request in an effort to facilitate mediation, stating that "**[a]ll discovery will be closed** on **4/22/2024[]**" and that "**[t]here will be no further extensions to this schedule**." (Mar. 7, 2024 ECF Order.)

---

[1] On January 3, 2023, the parties certified the close of fact discovery. (Letter, ECF No. 19.) This long-awaited milestone did not represent the end of the parties' delays. Defendants subsequently filed no less than six additional requests for extension of the discovery schedule. (*See* First Mot. for Extension of Time, ECF No. 18; Second Mot. for Extension of Time, ECF No. 20; Third Mot. for Extension of Time, ECF No. 22; Mot. to Adjourn and Fifth Mot. for Extension of Time, ECF No. 23; [Unnumbered] Mot. for Extension of Time, ECF No. 24; Sixth Mot. for Extension of Time, ECF No. 25; Sixth [sic] Mot. for Extension of Time, ECF No. 26.)

On April 2, 2024, the parties filed a report of mediation, indicating that the case remained unsettled. (Report of Mediation Unsettled, ECF No. 27; *see also* Apr. 12, 2024 ECF Order (noting that the parties filed the report).) Discovery closed on April 22, 2024. (*See* Apr. 12, 2024 ECF Order (reiterating that discovery would close on April 22, 2024).) The parties filed their joint pretrial order on June 21, 2024. (Proposed Joint Pretrial Order, ECF No. 29.) On July 12, 2024, the case was reassigned to the undersigned Magistrate Judge for all purposes, on consent of the parties. (Consent to Jurisdiction, ECF No. 32.)

On July 31, 2024, the Court scheduled trial to begin immediately after jury selection on January 27, 2025. (July 31, 2024 ECF Min. Entry & Order.) On January 9, 2025, one day before the parties' proposed *voir dire* was due, Plaintiffs requested adjournment of the trial due to a conflicting trial. (Letter Req. for Adjournment, ECF No. 35; Letter Second Req. to Adjourn, ECF No. 37.) The Court adjourned the trial to May 19, 2025, to take place immediately following jury selection. (Jan. 16, 2025 ECF Min. Entry & Order.)

Now, with the rescheduled trial less than two months away, Defendants seek leave to amend their answer to add allegations accusing Plaintiffs' counsel and several treating doctors of inflating injuries to generate litigation fees.[2] (Second Mot. to Amend,

---

[2] Defendants formally seek to add these fraud allegations as "a Counterclaim and Affirmative Defense." (Mot. to Amend, ECF No. 40, at 7; *see* Second Proposed Am. Answer, ECF No. 44, at ECF p. 5; *id*. at ECF p. 14.) An affirmative defense is "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, *even if all the allegations in the complaint are true*." Defense, Black's Law Dictionary (12th ed. 2024) (emphasis

ECF No. 40, at 1 (bringing the Court's attention to a RICO lawsuit "alleging that Plaintiff's Law Firm, Liakas Law, P.C. ('Liakas' or 'Plaintiffs' Law Firm'), and many others in concert, have engaged in a fraudulent scheme to manufacture and inflate the value of personal injury lawsuits"); Second Proposed Am. Answer, ECF No. 44 (containing redline).) *See Roosevelt Road Re, Ltd. et al. v. Liakas Law. P.C. et al.*, No. 25-CV-300 (RML). Defendants argue, in sum, that "this *could* be a staged accident." (Reply, ECF No. 45, at 5 (emphasis added).)[3]

In support of their proposed counterclaim, Defendants primarily argue that this case fits the pattern the *Roosevelt Road* plaintiffs allege in their RICO complaint. Specifically, Defendants contend that "plaintiffs' alleged accident and their subsequent medical treatment are and were fraudulent and said occurrence and treatment were a product [of] a fraudulent scheme and fraudulent medical treatment in an effort to seek recovery in excess of the real value of any claim." (Second Proposed Am. Answer, ECF No. 44, ¶ 17.) Defendants point to similarities between this case and the allegedly fraudulent personal injury cases detailed in the *Roosevelt Road* complaint. For example,

---

added). In contrast, a counterclaim is "[a] claim for relief asserted against an opposing party after an original claim has been made; esp., a defendant's claim in opposition to or as a setoff against the plaintiff's claim." Counterclaim, Black's Law Dictionary (12th ed. 2024). Here, Defendants claim, essentially, that "this could be a staged accident" and that Plaintiffs' injuries are exaggerated. (Reply, ECF No. 45, at 5.) However, Defendants seek to add no defenses that would, *if all the allegations in the complaint about Plaintiffs' injuries are true*, nullify Plaintiffs' *prima facie* case of negligence. Allegations of fraud in this context are thus more akin to a counterclaim than to an affirmative defense. "If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so." Fed. R. Civ. P. 8(c)(2). For the foregoing reasons, the Court construes the new allegations as a counterclaim, rather than as a counterclaim and an affirmative defense. Whether pleaded as an affirmative defense or counterclaim, the proposed amendment is denied as it would unduly expand and delay this case, as discussed herein.

[3] The Court notes that the third party's RICO claims are in their infancy; as of this filing, no party has answered the claims and no court has evaluated their merits. (*See Roosevelt Road Re, Ltd. et al. v. Liakas Law. P.C. et al.*, No. 25-CV-300 (RML).)

Defendants highlight the following facts from their own case: the allegedly "inflated demand;" that all plaintiffs are construction workers; that Plaintiffs were allegedly involved in "very minor car accident[s];" that Plaintiffs went to seek medical treatment 15 days after the accident; and that Plaintiffs went to the emergency room together. (*Id.* ¶ 44.) Defendants also note that two doctors and a doctor's office who treated Plaintiffs here are among those who allegedly provided excessive or unnecessary care in *Roosevelt Road*. (Second Mot. to Amend, ECF No. 40; Second Proposed Am. Answer, ECF No. 44, ¶¶ 21, 43.) Defendants state that "[t]he specific allegations laying out the pattern of fraud and the actual named defendants in the [*Roosevelt Road*] Complaint are exactly the same as those present in this case."[4] (Second Proposed Am. Answer, ECF No. 44, ¶ 20.)

Defendants' proposed allegations rest in part on a comparison between this case and the *Roosevelt Road* case, a very confusing prospect for a jury trial. Aside from describing the case, naming the doctors who provided healthcare to Plaintiffs here and who are named as defendants in *Roosevelt Road*, and pointing to inconsistencies in

---

[4] Both claims — that the specific allegations are the same as the *Roosevelt Road* allegations, and that the defendants are the same — are somewhat inaccurate. Plaintiffs here are Kleber Manuel Seaz, Sixto Diaz Tacuri, and Carlos Diaz Tacuri. (Compl., ECF No. 1-1.) The many defendants in the *Roosevelt Road* complaint, Docket No. 25-CV-300 (RML) include Liakas Law and Dean Liakas, who represent Plaintiffs, several doctors and offices who provided medical care to Plaintiffs, including Dr. Kuman, Dr. Jeyamohan, and Total Orthopedics & Sports Medicine, and many, many others. (Complaint, *Roosevelt Road Re, Ltd. et al v. Liakas Law. P.C. et al* ("*Roosevelt Rd.* Compl."), No. 25-CV-300 (RML) (E.D.N.Y. Jan. 17, 2025), ECF No. 1; Compl., ECF No. 1-1; Second Second Proposed Am. Answer, ECF No. 44, ¶ 20.) The *Roosevelt Road* complaint alleges facts in support of a claim that the many defendants conspired to turn nonexistent or minor injuries into massive personal injury cases. (*Roosevelt Road Compl.*, ECF No. 1.) Second, as discussed further above, Defendants' proposed counterclaims are not "exactly the same" as *Roosevelt Road*'s dozens of pages of RICO allegations. (*See* Second Proposed Am. Answer, ECF No. 44, ¶ 20.)

Plaintiff Seaz's story,[5] Defendants do not elaborate on why *Roosevelt Road*'s untested allegations demonstrate fraud *here* or how *Plaintiffs* themselves perpetrated the fraud against the named Defendants in this case. Rather, Defendants assert, without providing any specific factual allegations, that "[t]he aforementioned fraud and fraudulent scheme was with knowledge of the Plaintiffs of its falsity, was with an intent to defraud, and was justifiably relied upon by Defendants; and Defendants have been damaged in a sum that is ongoing and is yet to be determined." (*Id.* ¶ 57.)

On this basis, Defendants ask the Court to permit the filing of the proposed amended answer and to reopen discovery so that Defendants can take depositions and obtain "all billing records, payment records and communications" between the relevant doctors and the relevant Plaintiffs, without indicating what prevented Defendants from seeking or obtaining such records during fact discovery. (Mot. to Amend, ECF No. 40, at 8.) Defendants further ask the Court to "issue an Order stating that the attorney-client privilege protections have been waived since the allegations, based on the facts set forth above, pertain to a fraudulent scheme between Plaintiff [Seaz], Plaintiffs' Attorneys and Drs. Kumar and Jeyamohan." (*Id.* at 8.)

Unsurprisingly, Plaintiffs object to amendment. (*See* Response in Opp'n ("Response"), ECF No. 43.) Plaintiffs argue that amendment at this stage of the case will cause undue prejudice to Plaintiffs. (*Id.* at 2–3.) Plaintiffs also argue that amendment is futile, because Defendants have not alleged facts sufficient to constitute a fraud claim

---

[5] (*Compare* Proposed Am. Compl., ECF No. 44, ¶ 55 (including deposition testimony in which Mr. Seaz says he "[c]an't lift weight") *with id.* ¶ 56 (discussing personal investigator's finding that Mr. Seaz was lifting objects weighing at least 92 pounds at work less than two weeks after giving that testimony).)

under New York State law, and that the request to pierce attorney client privilege is frivolous. (*Id*. at 3–4.)

Defendants' reply does not engage meaningfully with Plaintiffs' arguments. On prejudice, Defendants argue that the amendment "1) will not require Plaintiffs to expend significant resources; 2) is not attributable to any delay on the part of the Defendants, and 3) can be accomplished in 73 days and should not delay the trial (which Plaintiffs already delayed once)." (Reply, ECF No. 45, at 4.) In response to the argument that Defendants failed to state a claim, they highlight the same similarities they highlighted in the motion, without providing any further detail. (*Id*. at 4–6.) Defendants also point to various state court procedural developments in a case they claim is similar. (*Id*. at 6.) Finally, as to the request to pierce attorney client privilege, Defendants fail to respond in any meaningful way to Plaintiffs' contention that such a request is frivolous.

## DISCUSSION

### I.  Legal Standards

Counterclaims must meet the standards applicable to all pleadings established by *Twombly* and *Iqbal*. *GEOMC Co., Ltd., v. Calmare Therapeutics, Inc.*, 918 F.3d 92, 99 (2d Cir. 2019). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

It is well established that "the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine*

*Research, Inc.*, 401 U.S. 321, 330 (1971). "However, under Fed. R. Civ. P. 15(a), leave to amend a pleading may *only* be given when factors such as undue delay or undue prejudice to the opposing party are absent." *SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 345 (2d Cir. 2004). Of particular relevance here, in analyzing whether to grant leave to file new counterclaims, the Second Circuit has held that courts must look to whether a proposed amendment would prejudice the opposing party or "unduly expand" the litigation. *GEOMC*, 918 F.3d at 101; *see also Fair Hous. Just. Ctr., Inc. v. Pelican Mgmt., Inc.*, No. 18-CV-1564 (ER), 2020 WL 4262291, at *4 (S.D.N.Y. July 24, 2020); *Hybrid Athletics, LLC v. Hylete, LLC*, No. 17-CV-1767 (VAB), 2019 WL 4143035, at *14 (D. Conn. Aug. 30, 2019) ("[T]he Court finds that the risk of undue prejudice to [plaintiff] from this amendment is minimal, as it does not appear resolution of this counterclaim would require any additional discovery, or turn on any genuine dispute of material fact."), *reconsideration denied sub nom. Hybrid Athletics, LLC v. Hylete, Inc.*, 2019 WL 4957921 (D. Conn. Oct. 8, 2019). The Second Circuit has "referred to the prejudice to the opposing party resulting from a proposed amendment as among the 'most important' reasons to deny leave to amend." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010). *See also State Tchrs Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) ("Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.").

As the Second Circuit observed in *GEOMC*, the law on "whether a new counterclaim may respond as broadly as one included in an answer to an original complaint or whether it must respond only to the new allegations of an amended complaint" had been somewhat unresolved, with courts in this circuit adopting

different approaches. *GEOMC,* 918 F.3d at 99. Accordingly, the *GEOMC* court

addressed this question in some detail:

> We think resolution of this issue depends on how far into the litigation the
> new counterclaim is asserted. If an amended answer with a new
> counterclaim is presented at an early stage of the litigation, the new
> counterclaim may normally be as broad as those filed in response to an
> original complaint. At a late stage of the litigation, however, a new
> counterclaim that raises issues beyond the scope of the new claims made
> in the most recent amended complaint will usually cause escalating
> prejudice to the counterdefendant and undue expansion of litigation that
> the court is charged with managing; for those reasons a new counterclaim
> should normally not be permitted if it exceeds the scope of the plaintiff's
> new claims. "As a general rule, the risk of substantial prejudice increases
> with the passage of time."

*GEOMC,* 918 F.3d at 100 (quoting 6 Wright & Miller § 1488 (3d ed.)). *See also Sacerdote v.*

*New York Univ.,* 9 F.4th 95, 115 (2d Cir. 2021) (setting forth the relevant standards for

amending pleadings depending on timing and procedural history), *cert. denied,* 142 S.

Ct. 1112 (2022).

## II.  Prejudice

Under *GEOMC,* the Court must consider (1) "how far into the litigation" the new

counterclaims are asserted, and (2) whether the proposed counterclaims raise "issues

beyond the scope of the new claims made in the most recent amended complaint."

*GEOMC,* 918 F.3d at 100; *see also Thor 680 Madison Ave. LLC v. Qatar Luxury Grp. S.P.C.,*

No. 17-CV-8528 (PGG), 2022 WL 836890, at *8 (S.D.N.Y. Mar. 21, 2022). On the question

of timing, as set forth above, Defendants first moved for leave to amend their

counterclaims on February 10, 2025, over three years into this litigation and

approximately three months before the rescheduled trial date. (*See* Mot. to Amend, ECF

No. 40.) The new proposed counterclaims are not in response to an intervening

amendment of the complaint. The complaint in this case has not been amended since it

was first filed on December 17, 2021. (*See* Compl., ECF No. 1-1; Answer, ECF No. 3.) As

to scope, given the length and breadth of the proposed amendments included in Defendants' proposed amended answer, and the fact that they seek to add widespread assertions of fraud, with RICO allegations incorporated by reference, there is no question that the proposed new counterclaims "raise[] issues beyond the scope of the new claims made in the most recent amended complaint." *GEOMC*, 918 F.3d at 100.

The Court finds that both of the questions that must be examined under the *GEOMC* framework weigh heavily against Defendants here. As to timing, the Court is cognizant that Defendants seek to add claims based on a case filed recently in this district that alleges fraud by Plaintiffs' counsel and some of Plaintiffs' witnesses. (*See* Mot. to Amend, ECF No. 40.) However, at this point in the litigation, fact discovery has been closed for over two years, and all discovery has been closed for almost a year. (*See* Letter, ECF No. 19; Apr. 12, 2024 ECF Order.)[6] In addition, the risk of prejudice to Plaintiffs continues to grow with the passage of time. *See GEOMC*, 918 F.3d at 100. Granting the proposed amendment would likely result in the expenditure of significant additional resources and a substantial delay in the resolution of this case because, if filed, the fraud counterclaim would almost certainly necessitate a lengthy period of time for additional fact and expert discovery. *See generally Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (identifying prejudice in the context of a motion to amend as including whether the proposed amendment would "(i) require the opponent to expend

_____

[6] The Court notes that Defendants have long been aware of the possibility — which exists in every personal injury case — that Plaintiffs' injuries may have been exaggerated or overstated, and Defendants have collected evidence to support their argument on this point. Notably, Defendants' original answer included an affirmative defense averring that Plaintiffs "did not sustain basic economic loss or 'serious injury.'" (Answer, ECF No. 3, ¶ 11.) In addition, Defendants' discovery included investigation into the seriousness of Plaintiffs' injuries. (*See, e.g.*, Second Proposed Am. Answer, ECF No. 44, ¶¶ 55–56 (comparing deposition testimony in which Plaintiff Seaz states he cannot lift heavy objects with a private investigator's findings that Plaintiff Seaz was lifting heavy objects at work within days of making that statement).)

significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction"). (*See also* Response, ECF No. 43, at 2–3 (discussing prejudice likely to result from the proposed amendments, including Defendants' request to reopen fact discovery).) Here, remarkably late timing of the proposed amendment weighs heavily against granting leave to amend.

More troublingly, the proposed counterclaim far exceeds the allegations in Plaintiffs' complaint, which Defendants have already answered. In the context of this litigation, the proposed counterclaim is not merely a response to the complaint; the allegations seek to undermine Plaintiffs' counsel's credibility writ large, by introducing into this case fraud claims and references to an unadjudicated RICO case that allegedly involves some of the witnesses in this case. (*See, e.g.*, Second Proposed Am. Answer, ECF No. 44, ¶¶ 19–20; *id.* ¶¶ 40–41 (describing the civil RICO case and stating, "[t]he specific allegations laying out the pattern of fraud and the actual named defendants in the Fraud Complaint are exactly the same as those present in this case").) In short, Defendants seek to incorporate allegations of separate civil RICO fraud claims by analogy, stating that "[i]t is clear that the present case fits perfectly with the fraudulent scheme laid out in the [Third-Party] Fraud Complaint, down to every last detail. This is beyond coincidence." (Mot. to Amend, ECF No. 40, at 5.)

Given the breadth and nature of Defendants' fraud allegations, which appear to address the entirety of Plaintiffs' counsel's personal injury practice, short of alleging RICO itself, it is hard to imagine a more prejudicial counterclaim than that sought to be

added here.[7] In one case involving a proposed RICO counterclaim,[8] the court observed

that "[a]llowing defendant to assert a RICO counterclaim at this time would not only

dramatically change the nature of the litigation but would also result in significant

additional expenses to plaintiffs." *Am. Soc'y for the Prevention of Cruelty to Animals v.*

*Ringling Bros. & Barnum & Bailey Circus*, 244 F.R.D. 49, 51 (D.D.C. 2007), *on*

*reconsideration in part sub nom. Am. Soc. for Prevention of Cruelty to Animals v. Ringling*

*Bros. & Barnum & Bailey Circus*, 246 F.R.D. 39 (D.D.C. 2007) ("*Ringling Brothers*"). Similar

to the proposed counterclaim in *Ringling Brothers*, Defendants' fraud by commission of

RICO counterclaim seeks to, effectively, infer "a number of predicate criminal acts, and

alleges an elaborate scheme." *Id.* Accordingly, the Court rejects Defendants' "argument

---

[7] It has been frequently observed that: "Civil RICO is an unusually potent weapon — the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991); *see, e.g., Gutterman v. Herzog*, No. 20-CV-1081 (AMD) (LB), 2020 WL 6728787, at *3 (E.D.N.Y. Nov. 16, 2020); *Bell v. Hubbert*, No. 95-CV-10456 (RWS), 2007 WL 60513, at *5 (S.D.N.Y. Jan. 8, 2007).

[8] To establish a civil RICO claim, "a plaintiff must show: '(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (quoting *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir. 1996)). A RICO plaintiff has two pleading burdens. First, a plaintiff "must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962 (1976), commonly known as 'criminal RICO.'" *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). To plead such a violation, the plaintiff must allege the following "seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Id.* (quoting 18 U.S.C. § 1962(a)–(c)). These seven elements must be adequately alleged "before turning to the second burden—*i.e.*, invoking RICO's civil remedies." *Id.* As to the second burden, a civil plaintiff must allege "that he was 'injured in his business or property by reason of a violation of section 1962.'" *Id.* (emphasis omitted) (quoting 18 U.S.C. § 1964(c)). In addition, the alleged RICO pattern must be pled with specificity and, in the case of fraud, particularity. *See Moore v. PaineWebber*, 189 F.3d 165, 172–73 (2d Cir. 1999). A defect in pleading any of the complex RICO elements may render a RICO claim futile. *Cf. Moss*, 719 F.2d at 17 (setting forth the elements required to allege a civil RICO claim). *See, e.g., Long v. Zhuang*, No. 22-CV-1293 (DG) (TAM), 2024 WL 4250308, at *7–14 (E.D.N.Y. Aug. 8, 2024) (identifying myriad deficiencies in proposed civil RICO claim), *report and recommendation adopted*, Sept. 16, 2024 ECF Order Adopting R. & R.

that any additional discovery would not be unduly burdensome to plaintiffs." *Id.* (*See* Reply, ECF No. 45, at 4–6.)

Furthermore, the significant expansion of the case proposed here would not entail "solely [] delay and litigation expense," which may be insufficient to warrant denial of leave to amend under the liberal standards of Rule 15. *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017). *See also Ringling Brothers*, 244 F.R.D. at 51–52. The record to date here strongly indicates that permitting a significant expansion of this case by adding Defendants' proposed fraud-by-RICO counterclaim — with allegations spanning all three Plaintiffs' claims and, perhaps, Plaintiffs' counsel's entire personal injury practice — is highly likely to derail the trial by unduly expanding the litigation. *See GEOMC*, 918 F.3d at 101. (*See also* Jan. 3, 2024 ECF Order (warning the parties against further extension requests given Defendants' serial delays).) The Court thus finds that the addition of Defendants' counterclaim *as a counterclaim* would invariably "delay the final disposition of the action." *Fido's Fences Inc. v. Canine Fence Co.*, No. 08-CV-754 (LDW) (AKT), 2009 WL 10709094, at *5 (E.D.N.Y. Oct. 5, 2009) (quotation marks omitted) (finding that "extensive additional discovery, as well as the additional motion practice anticipated . . . will undoubtedly take a significant period of time to complete given the complexity of the issues," and observing that "'[o]ne of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action'" (quoting *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 112 F.R.D. 417, 419 (S.D.N.Y. 1986))). The record of this case amply establishes that, should the counterclaims be amended to include a fraud claim of the breadth proposed by Defendants, the case would become more unmanageable, and the counterclaim could be "used as a tool to indefinitely prolong

13

this litigation." *Ringling Brothers*, 244 F.R.D. at 52. It would also almost certainly delay the final disposition of the case for many months, if not years.

For these reasons, Defendants' motion to file a third amended answer is denied in an exercise of discretion under Federal Rule of Civil Procedure 15(a), due to the high degree of undue prejudice it would cause Plaintiffs.[9]

## III. Futility

Leave to file Defendants' proposed fraud counterclaim is also denied because the claim, as alleged, is futile.

### A. Legal Standard

"Futility is a determination, as a matter of law, that proposed amendments would fail to . . . state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017) (quotation marks omitted); *Pottash v. Hello Living, LLC*, No. 19-CV-4530 (RPK) (SJB), 2021 WL 375341, at *3 (E.D.N.Y. Feb. 2, 2021). In considering a motion to dismiss under Rule 12(b)(6), "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (alteration in original) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

---

[9] By contrast, any prejudice to Defendants is much more minimal because they will have ample opportunity at trial to illustrate that Plaintiffs are exaggerating their claims and/or injuries, and they may engage in rigorous cross-examination of witnesses provided that they have a good faith basis to do so. In addition, should Defendants have sufficient timely evidence of fraud or RICO, they may commence a separate action against Plaintiffs or Plaintiffs' counsel or witnesses. *See H.L. Hayden Co.*, 112 F.R.D. at 423 (denying plaintiffs' motion to amend and noting that plaintiffs can commence a separate action, using facts established in the instant litigation).

However, a pleading that "merely offers labels and conclusions, a formulaic recitation of the elements, or 'naked assertions devoid of further factual enhancement,'" will not survive a motion to dismiss. *Turner v. N.Y. Rosbruch/Harnik*, 84 F. Supp. 3d 161, 166 (E.D.N.Y. 2015) (quoting *Iqbal*, 556 U.S. at 678). Although the Court must accept all factual allegations at the pleadings stage as true, the Court need not credit "legal conclusions" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory assertions." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 1999) (quotation marks and alteration omitted). Similarly, the Court should not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). More is required.

## B. Pleading Common Law Fraud

Interpreting Defendants' proposed counterclaim as raising claims sounding in fraud, the Court notes that the pleading requirements for common law fraud are less complicated than those required to plead RICO, but they are still "stringent." *Conopco, Inc. v. Wein*, No. 05-CV-9899 (RJH) (THK), 2007 WL 9818902, at *5 (S.D.N.Y. Aug. 31, 2007). To assert a claim for fraud under New York law, a plaintiff "'must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff.'" *Am. Transit Ins. Co. v. Bilyk*, 514 F. Supp. 3d 463, 475 (E.D.N.Y. 2021) (quoting *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015)); *see also Schlaifer Nance & Co. v. Est. of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997); *see also Vermeer Owners, Inc. v. Guterman*, 78 N.Y.2d 1114, 1116 (1991) (identifying the elements of fraud under New York law as "a representation of material fact, falsity, scienter, reliance and injury").

In federal court, fraud must also be pleaded in accordance with the heightened pleading standard described in Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Accordingly, "'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Gov't Emps. Ins. Co. v. IAV Med. Supply, Inc.*, No. 11-CV-4261 (ARR) (RER), 2013 WL 764735, at *4 (E.D.N.Y. Feb. 8, 2013) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)), *report and recommendation adopted*, 2013 WL 765190 (E.D.N.Y. Feb. 28, 2013). *See also Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004). "To be sufficient under Rule 9(b), 'a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 38 (S.D.N.Y. 1992) (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)).

## C. Analysis

As set forth above, the proposed amendments rest in part on an analogy to a separate complaint, which is over 200 pages and incredibly detailed. (*See* Second Proposed Am. Answer, ECF No. 44, at ¶¶ 23–36; *id.* ¶¶ 44–57; *see generally Roosevelt Rd.* Compl., No. 25-CV-300, ECF No. 1.) Plaintiffs contend that "Defendants do not cite any of the elements of a fraud claim or attempt to explain how their pleading would satisfy those elements. Rather, Defendants devote nine pages to summarizing another complaint with no identity of parties and repeatedly conflating evidence that they purport undermines Plaintiffs' negligence claims with 'fraud.'" (Response, ECF No. 43,

16

at 3.) Faced with a similar situation in *Linares v. City of New York*, the Appellate Division for the First Department affirmed the denial of the defendant's motion to amend to add a fraud counterclaim where "[t]he unproven allegations of fraud against plaintiff's attorney and medical providers in [a recently-filed] RICO complaint do not, without more, warrant a counterclaim for fraud against plaintiff himself." 223 N.Y.S.3d 62, 64 (App. Div. 1st Dep't 2024).

Keeping the core elements of fraud in mind — "a representation of material fact, falsity, scienter, reliance and injury," *Vermeer Owners, Inc.*, 78 N.Y.2d at 1116 — and taking all of Defendants' counterclaim allegations as true, the Court does not see how Defendants have pleaded all elements of fraud with particularity, including reliance on Plaintiffs' allegedly fraudulent conduct. As to scienter, reliance, and injury, Defendants conclusorily assert that the "fraud and fraudulent scheme was with knowledge of the Plaintiffs of its falsity, was with an intent to defraud, and was justifiably relied upon by Defendants." (Second Proposed Am. Answer, ECF No. 44, ¶ 57.) In support of amendment, Defendants also posit that "[t]he specific allegations laying out the pattern of fraud and the actual named defendants in the [RICO] Complaint are exactly the same as those present in this case." (Second Proposed Am. Answer, ECF No. 44, ¶ 41; *see also id*. ¶ 44 (alleging "similarities" but no specific fraudulent actions).) As discussed above, this is inaccurate and would be insufficient in any event as the Defendants here are not similarly situated to the plaintiffs in *Roosevelt Road* and the defendants in *Roosevelt Road* include very different groups of individuals than the Plaintiffs who have brought this case.

Even drawing all reasonable inferences in favor of Defendants, the proposed counterclaim does not proffer facts sufficient to plausibly allege scienter, falsity, *and reliance* by Defendants. Rather, it attempts to allege a pattern of dishonest behavior

17

adduced during discovery, including Defendants' own efforts to disprove Plaintiffs'
claims, which actually illustrates *a lack of reliance* on Plaintiffs' allegedly false assertions.
Accordingly, "the counterclaim fails to plead the essential element of justifiable reliance
with sufficient particularity." *Breton v. Dishi*, 225 N.Y.S.3d 209, 210 (App. Div. 1st Dep't
2025) (rejecting fraud counterclaim asserting that the plaintiff had misrepresented the
scope of his personal injuries, observing that "the record makes clear that defendant has
not, in fact, relied on plaintiff's alleged misrepresentations, but instead has denied them
in his answer and throughout the litigation" and noting that, to the extent the damages
asserted in the proposed fraud counterclaim were based on costs incurred due to the
plaintiff's pursuit of a fraudulent or frivolous claim, the defendant's remedy would be
to seek sanctions). Much like the situation in *Breton*, the proposed pleading and the
record of this case make clear that Defendants have not relied on Plaintiffs' claims; they
have contested them throughout. For all of these reasons, Defendants' proposed
counterclaim is deficiently pleaded and does not meet Rule 9(b)'s particularity
requirement. *See* Fed. R. Civ. P. 9(b); *N.B. Garments (PVT), Ltd. v. Kids Int'l Corp.*, No. 03-
CV-8041 (HB), 2004 WL 444555, at *2 (S.D.N.Y. Mar. 10, 2004). Absent factual allegations
sufficient to demonstrate falsity, scienter, intent, reliance, and damages, the Court
concludes that the counterclaim is futile as alleged.

*    *    *    *    *

To be sure, to zealously advocate for their clients in an adversarial system,
Defendants are free to question at trial the severity of Plaintiffs' damages and injuries,
as well as the necessity of the medical treatment they received. Imminently, the parties
will have the opportunity to present their evidence and arguments to a jury of New
Yorkers. To the extent Defendants wish to cast doubt on the credibility of Plaintiffs,
Plaintiffs' counsel, or the doctors they claim contributed to this scheme, they will have

an appropriate opportunity to do so at trial. Moreover, if Defendants have new claims, they may address them in a subsequent proceeding. *See supra* note 9. What Defendants may not do is assert an insufficient, eleventh-hour counterclaim that would unduly expand the case, confuse the issues before the jury, and require significant additional discovery in advance of the rapidly approaching trial. Finding that the proposed amendments are untimely and that the proposed counterclaim is futile as alleged, Defendants' motion to amend is denied.[10] Leave to replead is also denied due to the timing considerations discussed above.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to file a third amended answer. Absent settlement, the parties shall comply with all previously set deadlines. Trial is scheduled for May 19, 2025.

**SO ORDERED.**

Dated:  Brooklyn, New York
        April 2, 2025

*Taryn A. Merkl*
_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

---

[10] Defendants also request that "the Court issue an Order stating that the attorney-client privilege protections have been waived since the allegations, based on the facts set forth above, pertain to a fraudulent scheme between Plaintiff [Kleber Manuel Seaz], Plaintiffs' Attorneys and Drs. Kumar and Jeyamohan." (Mot. to Amend, ECF No. 40, at 8.) The crime-fraud exception allowing disclosure of documents normally subject to attorney client privilege typically applies when communications were made "in furtherance of contemplated or ongoing criminal or fraudulent conduct." *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983,* 731 F.2d 1032, 1038 (2d Cir. 1984). The parties agree that this exception only applies if the movant establishes probable cause. (Mot. to Amend, ECF No. 40, at 8 n.5; Response, ECF No. 43, at 4.) As discussed above, Defendants have not made a sufficient showing that fraudulent behavior occurred with respect to Plaintiffs here, let alone that any communications between Plaintiff Seaz and Plaintiffs' counsel were made "in furtherance of contemplated or ongoing criminal or fraudulent conduct." *In re Grand Jury Subpoena,* 721 F.2d at 1038.